Phillips et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued April 11, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*William S. Bailey,* with him *John B. Pearson, Dallett Hemphill, Harold K. Wood, Bailey & Rupp,* and *Reilly & Wood,* for appellants.

*Howard L. Criden,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission.

*Samuel Graff Miller,* with him *Henry P. Sullivan* and *Vincent P. McDevitt,* for electric company, intervening appellee.

OPINION BY GUNTHER, J., July 17, 1956:

In March, 1955 the Philadelphia Electric Company applied to the Public Utility Commission for approval to acquire a right-of-way across appellants' farm. To this application an answer was filed stating that the condemnation was contrary to public convenience and

necessity. Twenty seven other property owners who were affected by the application were allowed to intervene. A hearing was held, testimony taken, and on November 28, 1955, the commission made an order approving the application and issued a certificate of public convenience and necessity. This appeal followed.

Is the order for the proposed line supported by evidence of necessity? The record reveals that the purpose for the transmission right-of-way is to coordinate the company's system through the Bradford substation to assure adequate service to the Chester-Marcus Hook area. This proposed line will integrate the network to enable it to supplement power deficient areas from adjacent areas having available capacity. The whole enterprise, according to the testimony, will provide for the integration of the present Chester generating station and the proposed Eddystone station with other stations of the Philadelphia Electric Company and other Atlantic Seaboard utilities. This, it is asserted, is essential to national defense and industrial expansion. See *Lower Chichester Twp. v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 503, 119 A. 2d 674.

The Act of May 21, 1921, P. L. 1057, 15 P.S. 1182, provides for the exercise of eminent domain where the service is necessary for public convenience. Our Appellate Courts have held that not only existing needs are to be considered but also future necessities. *Chew v. Philadelphia*, 257 Pa. 589, 101 A. 915; *Pittsburgh Junction R. R. Company's Appeal*, 122 Pa. 511, 6 A. 564; *Pittsburgh, Fort Wayne and Chicago Railway Company v. Peet*, 152 Pa. 488, 25 A. 612. In *Byers v. Public Utility Commission*, 176 Pa. Superior Ct. 620, 109 A. 2d 232, we ruled that the selection of a route for transmission lines is a matter for the utility in the first instance and, unless it is shown that it proposes to ex-

ercise the powers conferred upon it wantonly or capriciously, the commission is not required to withhold its approval merely because another route might have been adopted which would damage the owner less or lessen the inconvenience to them in the operation of their property. Does the evidence show that the proposed lines are necessary and proper to furnish supplemental service? If it does, the applicant has the right of eminent domain to appropriate private property necessary for its use in the construction and operation of facilities for generating electric light, heat and power within limitations provided by the Act of 1921. The language of the Supreme Court in *Coplay Cement Manufacturing Company v. Public Service Commission,* 271 Pa. 58, 114 A. 649, is apposite: "It was not intended by the legislature that the Commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the Commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the Commission's jurisdiction."

This Court will not substitute its own judgment for that of the commission unless the order is clearly unreasonable and not in conformity with law, or where there is a flagrant abuse of discretion. It was shown that the proposed line is connected with improvement of service as an important factor. The route across the property was determined and fixed after careful investigation and consideration of all factors. It has not been shown by the property owners that the proposed route was selected wantonly or capriciously; on the contrary, the inability of appellants to point out another, more feasible route is in itself sufficient proof

of the company's ability and competency in selecting the route as proposed in the application. Nowhere in the record do we find that the proposed line is unnecessary, improper or not in furtherance of public service.

The question, it seems to us, is an administrative one. It is not for this Court to interfere with the commission's finding in questions which the law requires it to determine when there is sufficient evidence to sustain its conclusion.

The other question raised by appellant is whether the commission correctly refused to reverse the examiner on his ruling in the record, namely:

"I think you are entitled to know where the route is going from beginning to end. However, I don't think you are entitled to the title holders of the properties." Was the commission's order, upholding the examiner, reversible error? Appellants demanded the names of all property owners on the route line. The examiner refused their demand but, at the same time, permitted full cross-examination to determine the route. We cannot agree with appellants' contention that this action of the examiner, as upheld by the commission, was error. The records reveal that exhibit No. 3, a topographical map, shows, among other pertinent factors, the following evidence: (1) the entire route of the lines; (2) the names of the townships; (3) natural landmarks; and (4) communities, highways and railroads. This extensive information was available to the appellants and, we believe, was sufficient to enable them to determine the names of all property owners affected by the proposed line.

Approval of the application by the commission is amply supported by the evidence and is justified as an important factor in connection with the improvement of the service. In view of the reasons above stated

the appeal must be dismissed and the order of the commission affirmed. It is so ordered.