## Charch, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William S. Bailey,* with him *Reilly & Wood,* and *Bailey & Rupp,* for appellant.

*Jack F. Aschinger,* Assistant Counsel, with him *Howard L. Criden,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Samuel Graff Miller,* with him *Henry Paul Sullivan,* and *Vincent P. McDevitt,* for electric company, intervening appellee.

OPINION BY RHODES, P. J., June 11, 1957:

This is an appeal from an order of the Pennsylvania Public Utility Commission approving the exercise of the right of eminent domain by the Philadelphia Electric Company under the Act of May 21, 1921, P. L. 1057, 15 PS §1182.

Appellant, William Hale Charch, is the owner of a tract of land in Pennsbury Township, Chester County, across a portion of which the company proposes to construct, operate, and maintain a 220,000 volt electric transmission line.[1]

On October 25, 1955, the company filed an application with the commission seeking approval of the exercise of the right of eminent domain in acquiring a right

---

[1] It is the same transmission line which was involved in *Phillips v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 625, 627, 124 A. 2d 625, although the route in that case has apparently been modified.

of way over appellant's land. After a hearing, the commission approved the proposed acquisition or appropriation as necessary or proper for the service, accommodation, or convenience of the public. The appeal to this Court followed.

The question presented on appeal relates to the proximity of the proposed transmission line to a dwelling house and the curtilage.

The Act of May 21, 1921, P. L. 1057, §1 (b), 15 PS §1182 (b), provides that an electric company may appropriate property, with certain limitations not applicable to the instant proceeding, for the transmission or distribution of electric light, heat, and power, "except that . . . a dwelling-house or the reasonable curtilage, not to be less than three hundred feet, appurtenant thereto, shall not be appropriated . . ." The commission determined from the evidence that the nearest edge of the proposed right of way is two hundred sixty-three feet from the nearest of several dwellings on the Charch tract. However, between the dwelling and the proposed right of way there is a public road, thirty-three feet wide, and a right of way of the Wilmington and Northern Railroad, sixty feet wide. The proposed right of way for the electric transmission line is one hundred fifty feet wide, and it will be located between the railroad and a creek known as Brandywine Creek. Both the public road and the railroad run generally parallel to each other and to the proposed right of way.

It is the contention of appellant that the commission had no authority to approve the company's application for the exercise of the right of eminent domain. It is argued on behalf of appellant that under the Act of 1921, 15 PS §1182 (b), a right of way cannot be acquired by the appropriation of land within three hundred feet of a dwelling under any circumstances. We

cannot agree with appellant's theory. If that were the intent of the Legislature, it would have been sufficient for it to have said that no property shall be appropriated which is within three hundred feet of a dwelling. In our opinion, the Legislature neither said that nor intended it. The statute uses the words "appurtenant thereto" in describing the reasonable curtilage; and these words must be given consideration in applying the statute. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551; *Allentown v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 219, 222, 96 A. 2d 157. No word of a statute is to be left meaningless unless no other construction is possible. *Keating v. White,* 141 Pa. Superior Ct. 495, 504, 15 A. 2d 396.

The word "appurtenant" is defined as follows: "Belonging to; accessory or incident to; adjunct, appended, or annexed to . . ." Black's Law Dictionary, 3d Ed. See *Fisher Building Permit Case,* 355 Pa. 364, 369, 49 A. 2d 626. Ordinarily, the appurtenant curtilage is land that is contiguous to the dwelling.[2] It is only in exceptional cases, where the facts indicate that a separate parcel is necessary to the use and enjoyment of a dwelling, that it may extend beyond that upon which the dwelling is located. See *Wirsing v. Pennsylvania Hotel & Sanitarium Company,* 226 Pa. 234, 238, 75 A. 259. It does not appear in the present record that the land beyond the public road and the railroad is in any

---

[2] "Curtilage" has been defined in Bouvier's Law Dictionary as "The enclosed space immediately surrounding a dwelling-house, contained within the same enclosure."

The following is a more modern definition: " 'Curtilage, in law, means a small piece of land, not necessarily inclosed, around a dwelling house, and generally includes the buildings used for domestic purposes in the conduct of family affairs.' " *Burgoon's Estate,* 80 Ohio App. 465, 76 N. E. 2d 310, 312.

way necessary to the dwelling. On the contrary, the evidence indicates that all of the outbuildings necessary to the dwelling are located on the same side of the public road as the dwelling. No buildings are located on the tract to be acquired for the right of way. The land to be appropriated for the right of way is meadow land, and it is severed from the dwelling or curtilage appurtenant thereto by the public road and the railroad. It is obviously a separate parcel of land, physically disconnected from the dwelling and in fact unnecessary for the use and enjoyment thereof; it is not legally or factually appurtenant to the dwelling.

Appellant relies upon a statement in *Byers v. Pennsylvania Public Utility Commission,* 176 Pa. Superior Ct. 620, 625, 109 A. 2d 232, 234, to the effect that under the Act "land may not be appropriated for transmission of electric energy within 300 feet of a dwelling house." Appellant places a construction which is too broad upon this sentence when read out of its context. There was no question in the *Byers* case involving the delineation of the appurtenant curtilage as there is in the one before us. In the former the transmission line was located in the middle of a contiguous tract seven hundred feet from the dwelling; and we merely noted that the distance was much in excess of the distance mentioned in the Act.

We recognize that the words "not to be less than 300 feet" have meaning in this statute. They establish the minimum size of the "reasonable curtilage" appurtenant to a dwelling. They do not, however, automatically extend the curtilage beyond the parcel on which the dwelling is located. In all cases, whether the curtilage is the minimum of three hundred feet or greater, it must be appurtenant to the dwelling, either as a contiguous tract or as a separate additional tract which is shown by the facts to be necessary for the

use and enjoyment of the dwelling. By thus giving effect to all the words of the statutory provision, we think its scope and meaning become clear.

Order is affirmed.