188 So.2d 733 (1960)
LOUISIANA POWER AND LIGHT COMPANY, Plaintiff-Appellant,
v.
Robert W. ANDERSON, Defendant-Appellee.
No. 10636.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1960.
Rehearing Denied August 4, 1966.
*734 Theus, Grisham, Davis, Leigh & Brown, Monroe, Cotton & Bolton, Rayville, for appellant.
John C. Morris, Jr., Rayville, for appellee.
Before HARDY, GLADNEY, and BOLIN, JJ.
HARDY, Judge.
This is an expropriation suit by which plaintiff seeks to acquire a right-of-way across property of the defendant for the construction of a 500 KV electric transmission line. From judgment rejecting the plaintiff's demands it has appealed.
By stipulation of counsel the trial of this case was expressly limited to a determination of plaintiff's right to expropriate the right-of-way for the transmission line as located. The question of compensation to be paid by defendant in the nature of damages was specifically reserved for future trial.
As a consequence the sole issue presented by this appeal concerns a determination as to whether the location of plaintiff's transmission line has been made in an arbitrary or capricious manner constituting an abuse of discretion or evidence of bad faith.
The physical facts established on trial are that the right-of-way sought by plaintiff in this case constitutes the only remaining unacquired segment in Richland Parish. The high-powered transmission line which is now in the final phase of construction was laid out by plaintiff's consulting engineers in accordance with accepted and approved engineering practices along a route constituting a straight line, as nearly as possible and practicable, between Vicksburg, Mississippi and Sterlington, Louisiana. The expert testimony clearly supports the desirability of preserving the generally straight line route with a minimum of angular deviations, none of which involves a departure in excess of five degrees. The line as originally planned and surveyed would have passed within 150 feet of defendant's home, and plaintiff's engineers voluntarily changed the route in such manner as to remove the center of the 200 foot right-of-way to a distance of approximately 500 feet from defendant's residence. This deviation was effected by changing the location of several of the steel towers supporting the line on both sides of defendant's property. As a consequence the total of the angulation changes approximated six degrees to the west and slightly more than four degrees to the east of defendant's property. The effect of these changes was to remove the location of the right-of-way to a point where the south line thereof encroaches only approximately nine feet as it crosses a corner of the 20 acre tract of land upon which defendant's residence is located at a distance of 398 feet measured from the closest point of the residence itself.
The record further establishes the fact that plaintiff's right-of-way agent, an employee of Ford, Bacon & Davis, had contacted defendant at least six times over a period of approximately thirteen months extending from February, 1965, to March, 1966, for the purpose of negotiating a right-of-way agreement. It is clear that during this period of time defendant consistently objected to the location of the line, urging that it be removed an additional several *735 hundred feet south of his residence tract of land. However, it was further testified and admitted by defendant that in his last three conversations with plaintiff's representative the negotiations had been restricted to the compensation for damages which defendant contended should be fixed at $500.00 per acre as opposed to the maximum authorization given plaintiff's representative of $350.00. Defendant further acknowledged he had advised plaintiff's agent that he would agree to the construction, under protest, on the basis of $500.00 per acre if he could be assured that the transmission line would not interfere with television or radio reception.
In support of the contention that plaintiff's location of the line was arbitrary, capricious, etc., defendant presented on trial the testimony of Mr. D. F. Burkhalter, Jr., a consulting electrical engineer. The gist of the testimony of this witness is found in his conclusion that the route of the transmission line could be removed to a point where the right-of-way would be approximately 800 feet distant from defendant's residence. In other words, this witness had laid out an alternate route which was exclusively designed to better serve defendant's individual convenience. This alternate proposal would have brought the line to within approximately 350 feet of the home residence of one of defendant's neighbors. The alternate proposal, according to Mr. Burkhalter's testimony, would necessitate the relocation of at least thirteen of the steel supporting towers as provided in connection with the route determined by plaintiff. The record does not disclose how many of these towers had actually been constructed or were in process of construction at the time of trial, but we do not consider this point to be of substantial importance for reasons which are set forth below.
The question involved in this case cannot be answered solely upon the basis of the conclusion that the route of plaintiff's line could be moved to such a degree as would less adversely affect plaintiff's personal wishes and convenience. Rather the question is whether the route proposed by plaintiff was arbitrarily selected and imposes an undue and unnecessary burden of damage or inconvenience upon defendant. It is, therefore, not enough to establish the fact that another route is feasible but the burden is upon defendant to establish the bad faith of plaintiff and its abuse of the power of expropriation which is granted by law.
Under LSA-R.S. 19:2(9) the right of expropriation is granted to:
"Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses. The buildings, transmission lines, stations, and sub-stations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner."
In this time of almost unimaginable development in every field of science and the increasing benefits to the general public that result from such progress it is inevitable that the rights of individuals must necessarily be subjected to some measure of damage, inconvenience and even danger, but in the overall interest of the better service of the general welfare a law can only require that these elements be minimized so as to have the least possible detriment to the interest and rights of the individuals affected.
The principles which affect the issue under consideration were examined by our brethren of the First Circuit in Central Louisiana Electric Company, Inc. v. Covington & St. Tammany Land & Improvement Co. (1961) La.App., 131 So.2d 369. The comprehensive, well-reasoned and convincing opinion of Judge Landry in the cited case clearly enunciates the principles that the mere availability of alternate routes is not a determinative factor; *736 that the statute quoted, supra, must be reasonably construed and requires only the application of sound engineering and economic principles, and, finally, and most important, that courts will not disturb or interfere with the location of rights-of-way by condemnors in the absence of evidence that the privilege of expropriation has been abused.
These principles have again been considered and approved by the same court in Texas Eastern Transmission Corporation v. Bowie Lumber Co. (La.App., 1st Cir., 1965), 176 So.2d 735.
Careful examination of the record in this case fails to establish any abuse of discretion, any evidence of bad faith, or any arbitrary or unreasonable action on the part of plaintiff in connection with the location of the route of the transmission line which it has selected and approved.
Counsel for defendant substantially relies upon the opinion rendered by our brethren of the First Circuit on original hearing of the case of Gulf States Utilities Company v. Heck, et al. We cannot rely upon this as being an authoritative pronouncement in view of the fact that a rehearing has been granted and the judgment is not yet final.
While the trial judge did not render written reasons for judgment, we think he made his position and the reasons therefor abundantly clear by comments during the course of trial which were incorporated in the record and which we quote as follows:
"COURT: Mr. Anderson built that home long, long before they mapped out this high pressure line through there. He built it for a permanent home apparently, he has been there since 1953 he said."
* * * * * *
"COURT: And he built it for a permanent home without having to contend with the high pressure line and have his radio and TV interfered with by static and etc. It's not the most convenient place for him to cross his property, he is ready to give them a route across there. Not give it to them, at a reasonable price."
* * * * * *
"COURT: I wouldn't want it by mine and you woudn't want it by yours. And if they could locate that line to let him go ahead and not have the danger there close to him in case of tornadoes, or storm or flying kites or anything of that kin[g] they should do it. After all the customers are going to pay the price. The people that use the utility."
Despite our complete personal agreement with the attitude evidenced by the above quoted remarks of the trial judge, unfortunately, we cannot find legal reason to enforce such personal desires which would eliminate all possibilities of individual damage, inconvenience or danger. We freely concede that no normal person would willingly accept the placement of a highpowered transmission line, the location of a gas transmission line or the route of a heavily traveled highway on or near the home which he has built for the enjoyment and convenience of himself and his family. But, unfortunately for the wishes of individuals, these and almost innumerable other comparable developments serve the greater, more important and far-reaching needs of the general public and outweighs the consideration of individual convenience and desire. The establishment of a precedent in a case of this nature would justify the same conclusion in a multitude of comparable cases, and the result would be to place the convenience of individuals above the requirements of public service and utility.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment adjudicating to plaintiff, Louisiana Power & Light Company, *737 its successors and assigns, a perpetual servitude of right-of-way over and across the land owned by defendant, Robert W. Anderson, situated in Section 1, Township 17 North, Range 9 East, Richland Parish, Louisiana, more particularly described as follows:
A right-of-way two hundred (200') feet wide across the property of ROBERT W. ANDERSON in Section 1, Township 17 North, Range 9 East, Richland Parish, Louisiana, said right-of-way to extend one hundred (100') feet on each side of the center line as now staked on the ground and described as follows:
Beginning at a point in a fence for the East line of the said N½ of the NW¼ said point being 680 feet southerly along said fence from the N¼ corner of said Section 1; Thence N 62° 28' W along said center line 1,046 feet to a point of exit in the East right-of-way fence of the Missouri Pacific Railroad; Thence continue N 62° 28' W 124 feet across said railroad right-of-way to a point where said center line re-enters property of Robert W. Anderson in the West right-of-way fence of said railroad; Thence continue N 62° 28' W along said center line 267 feet to a point of exit in the center line of a dirt road for the North line of said Section 1, said point being 281 feet westerly along center line of said dirt road from the center line of the Missouri Pacific Railroad.
Also a triangular shaped tract in the N½ of SW¼ of the NE¼ of said Section 1 and more particularly described as follows:
Beginning at a point where the North line of said N½ of SW¼ of NE¼ intersects the center line of Highway 17; Thence southeasterly along the center line of said Highway 12 feet to a point where the southerly power line right-of-way enters the property of Robert W. Anderson, said point being 100 feet southerly at right-angles to the center line of said power line right-of-way as now staked on the ground; Thence N 62° 28' W along said southerly right-of-way line 24 feet to a point in the North line of said N½ of the SW¼ Thence easterly along said North line 20 feet to the point of beginning.
The above described center line crosses the property of ROBERT W. ANDERSON a total of one thousand three hundred thirteen (1313') feet and the right-of-way contains six and 04/100 (6.04) acres of land, more or less.
It is further ordered that the right-of-way above described is adjudicated to plaintiff for the purpose of locating, constructing and maintaining an extra high voltage electric transmission line consisting of steel towers with the wires and appurtenances necessary thereto and in connection with said adjudication there is granted the right to open, clear and maintain the said right-of-way and to keep the same clear of underbrush, trees and other obstructions, including danger timber, which, in the opinion of plaintiff might interfere with or constitute a hazard to the construction and operation of said electric line, with the free right of ingress and egress to and from and upon the said right-of-way for the purpose of constructing, maintaining, repairing, replacing, operating or removing at will said electric line and appurtenances thereto upon, over and across the above described land.
It is further ordered that the adjudication as above ordered be and it is conditioned upon payment by plaintiff in favor of defendant of all such damages as may be agreed upon, or judicially determined by any subsequent suit, and in connection therewith defendant's right to claim damages is specifically reserved.
Costs of both courts in this proceeding are taxed against defendant-appellee.
*738 BOLIN, Judge (dissenting).
I am unable to subscribe to the majority's statement that "the sole issue presented by this appeal concerns a determination as to whether the location of plaintiff's transmission line has been made in an arbitrary or capricious manner constituting an abuse of discretion or evidence of bad faith." Rather, I think the issue is one of law, i. e., whether Louisiana Power and Light Company has complied with the mandatory requirements of Louisiana Revised Statutes 19:2(9).
I know of no other expropriation law in Louisiana imposing similar restrictions on the expropriating authority. While I am in complete accord with the majority that Judge Landry wrote a comprehensive and scholarly opinion in Central Louisiana Electric Company v. Covington & St. Tammany Land and Improvement Company (La.App. 1 Cir., 1961) 131 So.2d 369, I observe therein the statement:
"The question presented for determination, namely, the extent of the obligation incumbent upon plaintiff by the limitations and restrictions respecting safety to persons and property and minimization of inconvenience to landowners, is apparently presented to this court as a matter of first impression insofar as the jurisprudence of our own state is concerned."
The authorities cited in support of the ultimate conclusions therein were either cases from other jurisdictions or they involved the expropriation of property for other purposes than for transmission of electric power. It is appropriate to note that writs were not applied for in that case.
If any inference is to be drawn from the Covington case that the same rules apply in determining the reasonableness of the location of a right of way for an electric power line as for other public utilities, I respectfully disagree with the holding.
The majority opinion concedes no normal person would want this high-powered electric transmission line on or near a home he has built for the enjoyment and convenience of his family but it finds no legal means to avoid or prevent it. I suggest the very statute in question offers the legal remedy.
The landowner in the instant case did everything in his power to be fair and reasonable with plaintiff. All he asks is that this transmission line be placed farther from the front yard of his residence. The alternate route was only a suggestion. Any substantial move to the north would have lessened the danger and inconvenience of defendant, would not have placed the line as close to the residence of his neighbor as to that of Anderson and would have still been within the tolerance angle of good engineering practice. Surely if Louisiana Revised Statutes 19:2(9) placed any additional responsibility on an electric transmission company it did this much.
Assuming the Covington case is correct as to the results, it can be distinguished factually from the instant case. There the landowner insisted the line be re-routed so as to completely miss his property or be placed underground. Here Mr. Anderson is suggesting merely a re-routing of the line over property of the same landowners at no greater deviation of angles, but so as to be less inconvenient and dangerous to his residence.
I respectfully dissent.
Rehearing denied; BOLIN, J., dissented.